[No. B180134. Second Dist., Div. Eight. Sept. 14, 2006.]

JOAQUIN CAMACHO, Plaintiff and Appellant, v.
AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA et al., Defendants
and Appellants,
BELL CORPORATION OF AMERICA, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1.B., 1.C., and 2. of our DISCUSSION.

## Counsel

Angelo & Di Monda, Christopher E. Angelo, Joseph Di Monda; Spray Gould & Bowers, Keith Walden, Darren M. Harris and Stan A. Grombchevsky for Plaintiff and Appellant.

Reed Smith, Lorenzo Gasparetti, Kathy M. Banke and Margaret M. Grignon for Defendants and Appellants.

Carlson, Messer & Turner, Charles R. Messer, Steven Jung and Larissa G. Nefulda for Defendant and Respondent.

Bill Lockyer, Attorney General, Albert N. Sheldon, Assistant Attorney General, and Ronald A. Reiter, Deputy Attorney General, as Amici Curiae

## Opinion

**FLIER, J.**—Appellant Joaquin Camacho (Camacho), an uninsured driver, rear-ended a driver insured by Interinsurance Exchange of the Automobile Club (Exchange). Exchange indemnified its insured and assigned to respondent Bell Corporation of America (Bell) for collection its claim of $9,377.51 against Camacho.[1] After paying $500 of the sum claimed, Camacho filed this purported class action against Exchange, Bell, the Automobile Club of Southern California and ACSC Management Services, Inc. We refer to Exchange, Bell, the Automobile Club of Southern California and ACSC Management Services, Inc., collectively as the defendants. Since portions of this opinion do not involve Bell, we refer to Exchange, Automobile Club of Southern California and ACSC Management Services, Inc., as the "Insurance Defendants."

Acting pursuant to its own motion, and after receiving briefing by the parties, the trial court granted judgment on the pleadings in favor of all of the defendants. Camacho appeals from this judgment, which we affirm.

While the action was pending and before judgment was entered, Exchange filed a special motion to strike under Code of Civil Procedure section 425.16 (SLAPP).[2] The trial court denied this motion, and Exchange appeals from this order. We agree with the trial court's reason for denying this motion and affirm the order.

---

[1] Insurance Code section 11580.2, subdivision (g) provides in relevant part that "[t]he insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom the claim was paid against any person legally liable for the injury or death to the extent that payment was made."

[2] Strategic lawsuit against public participation.

## PROCEDURAL BACKGROUND

Following the filing of Camacho's complaint on May 11, 2004, Exchange filed its SLAPP motion, as well as a demurrer, in July 2004. The demurrer was based on three grounds. They were: (1) Camacho's claims were barred by the litigation privilege; (2) the class allegations were inadequate as to the predominance of common issues of law and fact; and (3) the inequitable nature of Camacho's claim—seeking to reward uninsured motorists who are trying to avoid financial responsibility—was a bar to the equitable relief under Business and Professions Code section 17200 et seq.

On September 24, 2004, on the same day that the demurrer and the motion to strike were argued, the trial court issued a written order, which stated that, on the court's own motion, the matter of a judgment on the pleadings was to be heard on October 19, 2004.[3] In relevant part, the order stated that "the court has serious reservations as to whether Bell's alleged collection practices constitute unfair business practices. Specifically, after perusing the letters attached to the complaint, the court does not find them to be unlawful, deceptive or unfair." The parties were given an opportunity to submit briefs on the court's motion for a judgment on the pleadings.

The court ruled on all matters on October 19, 2004. The court sustained the demurrer to the class allegations with leave to amend and overruled the balance of the demurrer. The court denied the motion to strike on the ground that the moving parties had not shown that Bell's statements were in connection with an "issue of public interest."

In granting the motion for judgment on the pleadings, the trial court, citing *Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1158 [97 Cal.Rptr.2d 722], ruled that the complaint failed to allege that the gravity of the harm to Camacho outweighed the utility of defendants' conduct and that, even if defendants' conduct was "theoretically unfair, no actual unfairness is alleged to have harmed plaintiff." The court also found that the causes of action for fraud and negligent misrepresentation failed to plead facts sufficient to constitute causes of action because no jury could find that the letters sent by Bell were likely to deceive. The trial court also rejected the claim that Bell had engaged in the unauthorized practice of law.

## FACTS

For the purpose of reviewing the court's ruling on the judgment on the pleadings, we turn to the material facts that are pleaded in the complaint,

---

[3] Code of Civil Procedure section 438, subdivision (b)(2) authorizes the court to grant a motion for judgment on the pleadings on its own motion.

which, except for contentions, deductions or conclusions of law, are deemed to be true in this appeal. (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 989 [94 Cal.Rptr.2d 643].)[4]

The first of five causes of action of this purported class action[5] is based on Business and Professions Code section 17200 for unfair practices in which all of the defendants are allegedly engaged in. These allegations center on the efforts of Bell to collect monies allegedly due to the Insurance Defendants.[6] Two letters demanding payment sent to Camacho by Bell are attached as exhibits to the complaint.

In part, the approach taken by the complaint is to allege, as facts, how a recipient of the Bell letters construes the collection letters sent by Bell. Thus, the complaint alleges as "unfair, unlawful or fraudulent activity" the following: suggesting in the collection letter that the subrogation claim asserted by defendants is a liquidated debt; creating the false impression in the mind of a reasonable recipient of the collection letter that he or she is receiving the protection of the Fair Debt Collection Practices Act (FDCPA),[7] when in fact defendants are not complying with FDCPA; and asserting in the letter that an investigation has revealed that the recipient of the letter is responsible for the accident, even though responsibility is determined by means of a court action or uninsured motorist's arbitration.

---

[4] "A [motion for judgment on the pleadings] is equivalent to a demurrer and is governed by the same standard of review. All material facts that were properly pleaded are deemed true, but not contentions, deductions, or conclusions of fact or law. If leave to amend was not granted, we determine whether the complaint states a cause of action and whether the defect can reasonably be cured by amendment. If the pleading defect can be cured, the trial court committed reversible error. If not, we affirm. The plaintiff bears the burden of proof on this issue. Finally, the judgment will be affirmed if it is proper on any grounds raised in the motion even if the court did not rely on those grounds." (*Pang v. Beverly Hospital, Inc., supra,* 79 Cal.App.4th at p. 989.)

[5] The validity of the class is not before us and is in any event the subject of an amendment, since leave was given to amend the class allegations. The complaint defines the purported class as: (1) Those uninsured motorists who have been involved in a motor vehicle accident with a driver insured by the Insurance Defendants; (2) who have been contacted by Bell in order to collect some or all of the monies that the Insurance Defendants paid their insured for injuries or damages arising out of the accident; (3) for which there has not been an adjudication of fault to which the uninsured motorist was a party. For reasons that are not apparent, the complaint alleges the "class period" as the time commencing on May 7, 2000, to the time of trial.

[6] Bell characterizes itself in its appellate brief as a "collection agency and subrogation recovery service."

[7] The Rosenthal FDCPA (Civ. Code, § 1788 et seq.), enacted in 1977, regulates the collection of consumer debts. The purpose of this act is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." (Civ. Code, § 1788.1, subd. (b).)

The complaint also sets forth allegedly unfair conduct that is not predicated on the collection letters. Thus, the complaint alleges that defendants: threaten to report the failure to pay the subrogation claim to credit reporting bureaus, as though it was an unsatisfied consumer debt; improperly report the failure to pay the subrogation claim to credit reporting bureaus; collect the insured's deductible, even though defendants are not entitled to it; and threaten to petition the Department of Motor Vehicles to revoke the recipient's driver's license if he or she does not pay the claimed debt.

The first cause of action closes by alleging as a "pattern and practice of unfair, unlawful and fraudulent conduct" the following: "attempting to collect and/or collecting monies from uninsured motorists without first obtaining a judicial or arbitration determination of fault and/or liability of the parties to the automobile accident in a forum in which the uninsured was a party;" "attempting to collect and/or collecting through BELL, and other collection agencies or similar entities, monies from uninsured motorists utilizing the methods, representations and omissions alleged above;" and "sending misleading form letters that are intended to intimidate, coerce and/or to dupe the recipient to pay whatever sums of money the said INSURANCE DEFENDANT and BELL claims they are owed." The complaint also alleges that Bell is engaged in the unauthorized practice of law.

The second cause of action seeks a judicial declaration that form letters sent by Bell deceive the uninsured motorist into believing that he or she actually owes the sum demanded, that form letters and subsequent telephone calls "amount to coercion and are designed to place the Plaintiff Class under duress," and that defendants' practices are unfair and unlawful business practices. The third cause of action is for injunctive relief along the same lines.

The fourth and fifth causes of action, respectively for fraud and negligent misrepresentation, are based on the same factual allegations as are set forth in the first cause of action.

## DISCUSSION

1. *The Judgment on the Pleadings*

A. *Camacho Cannot Show That Defendants' Practices Are "Unfair" in Terms of Business and Professions Code Section 17200*

The question is whether the complaint alleges facts that constitute an "unfair" practice under Business and Professions Code section 17200 (section

17200).[8] The trial court concluded that it does not allege such facts. However, the test that the trial court applied has been disapproved by the California Supreme Court in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*) (see text, *post*).

As we explain below, there is some uncertainty about the appropriate definition of the word "unfair" in consumer cases brought under section 17200. Since the issue of the correct definition of "unfair" in consumer cases was not briefed, we solicited the views of the parties on the matter. (Gov. Code, § 68081.) Independently of our request, the California Attorney General requested, and was given, leave to file an amicus curiae brief on this issue. The parties have had an opportunity to comment on the views expressed in the Attorney General's amicus curiae brief.

Assisted by these contributions, we endeavor to state below what, in our opinion, is the correct definition of "unfair" in section 17200 consumer cases. We conclude that, under this test, Camacho has not, and cannot, allege facts that constitute an unfair practice under section 17200.

We begin with *Cel-Tech, supra,* 20 Cal.4th at page 184 where the court addressed the question when conduct is "unfair within the meaning of the unfair competition law." After stating that the California Supreme Court had not as yet defined "unfair" and that "courts may not apply purely subjective notions of fairness," the court noted that some appellate courts had attempted to define this term. Among those definitions was the one adopted by the trial court in the case at bar, i.e., the test that the court must weigh the utility of the defendants' conduct against the gravity of the harm to the victim. (*Ibid.*) The court concluded that the various definitions pioneered by the appellate courts, including the one named, "are too amorphous and provide too little guidance to courts and businesses." (*Id.* at p. 185.) The court went on to state: "Accordingly, we believe we must devise a more precise test for determining what is unfair under the unfair competition law. To do so, we may turn for guidance to the jurisprudence arising under the 'parallel' (*Barquis v. Merchants Collection Assn.* [(1972)] 7 Cal.3d [94,] 110 [101 Cal.Rptr. 745, 496 P.2d 817]) section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a)) (section 5). 'In view of the similarity of language and obvious identity of purpose of the two statutes, decisions of the federal court on the

---

[8] Section 17200 provides: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

subject are more than ordinarily persuasive.' (*People* ex rel. *Mosk v. National Research Co. of Cal.* [(1962)] 201 Cal.App.2d [765,] 773 [20 Cal.Rptr. 516]; see also *Bank of the West v. Superior Court* [(1992)] 2 Cal.4th [1254,] 1263–1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].)" (*Cel-Tech, supra,* 20 Cal.4th at p. 185.)

After reviewing federal law on the subject, the Supreme Court concluded: "These principles convince us that, to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech, supra,* 20 Cal.4th at pp. 186–187, fn. omitted.)

In handing down this ruling, the Supreme Court also made clear that *Cel-Tech* involved an action by a competitor alleging anticompetitive practices, and not an action by consumers for a business practice alleged to be unfair. (*Cel-Tech, supra,* 20 Cal.4th at p. 187, fn. 12.) It has been noted that this has resulted in a split in the Courts of Appeal. (Stern, Bus. & Prof. C. § 17200 Practice (The Rutter Group 2005) ¶ 3:121, p. 3-29 (rev. # 1, 2005).) One line of cases applies *Cel-Tech*'s definition of "unfair" to consumer cases (e.g., *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854 [128 Cal.Rptr.2d 389]),[9] the other recognizes the new *Cel-Tech* definition, but applies the old definitions to consumer cases (e.g., *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1170 [121 Cal.Rptr.2d 79]).

As the Attorney General points out, the pre-*Cel-Tech* definitions of unfair are not limited to the balancing test applied by the trial court, but also include the tripartite test set forth in *FTC v. Sperry & Hutchinson Co.* (1972) 405 U.S. 233, 244, footnote 5 [31 L.Ed.2d 170, 92 S.Ct. 898]. This test was first

---

[9] "Moreover, where a claim of an unfair act or practice is predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." (*Gregory v. Albertson's, Inc., supra,* 104 Cal.App.4th at p. 854.)

applied by a California court in a section 17200 setting in *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530 [206 Cal.Rptr. 164].[10]

The question is whether *Cel-Tech*'s definition of "unfair" overrules appellate court opinions that use other definitions. We think that it does. Definitions that are too amorphous in the context of anticompetitive practices are not converted into satisfactorily precise tests in consumer cases. This squares with the fact that, in disapproving appellate court opinions defining "unfair" in "amorphous" terms, the Supreme Court did not hold that the old definitions were appropriate in consumer cases.

We do not think, however, that this means that the finding, in a consumer case, that the practice is unfair must be " 'tethered' to specific constitutional, statutory or regulatory provisions," as one Court of Appeal has put it. (*Gregory v. Albertson's, Inc., supra*, 104 Cal.App.4th at p. 854; see also fn. 9, *ante*.) In other words, we do not think that *Cel-Tech*'s definition of "unfair" in cases involving anticompetitive practices applies to consumer cases.

There are two reasons for this.

First, "tethering" a finding of unfairness to "specific constitutional, statutory or regulatory provisions" does not comport with the broad scope of section 17200.[11] "Tethering" the concept of unfairness to existing positive law undercuts the principle that a practice is prohibited as "unfair" or "deceptive," even if it is not "unlawful" or vice versa. (*Cel-Tech, supra*, 20

---

[10] "No California court has yet defined in this setting the parameters of the term 'unfair business practice.' There are, however, guidelines set by the Federal Trade Commission and sanctioned by the United States Supreme Court in *F.T.C. v. Sperry & Hutchinson Co.*[, *supra*, 405 U.S. at p.] 244, which offer needed guidance. The United States Supreme Court said: 'The Commission has described the factors it considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." ' " (*People v. Casa Blanca Convalescent Homes, Inc., supra*, 159 Cal.App.3d at p. 530.)

[11] "[T]he Legislature, in our view, intended by this sweeping language [in section 17200] to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, although most precedents under section 3369 [today section 17200] have arisen in a 'deceptive' practice framework, even these decisions have frequently noted that the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable ' "new schemes which the fertility of man's invention would contrive." ' " (*Barquis v. Merchants Collection Assn., supra*, 7 Cal.3d 94, 111–112, fn. omitted.)

Cal.4th at p. 180.) As our Supreme Court has put it, the courts need to deal with innumerable new schemes that the fertility of man's invention can contrive (*Barquis v. Merchants Collection Assn.*, *supra*, 7 Cal.3d at p. 112); in the context of consumer cases, "tethering" to positive law undercuts the ability of the courts to deal with new situations, and new abuses.

Second, anticompetitive conduct is best defined in terms of the policy and spirit of antitrust laws; the same cannot be said of a business practice that is "unfair" or "deceptive" in the terms of section 17200. That is, cases involving anticompetitive conduct move in a far smaller, and more clearly defined, universe than unfair or deceptive business practices. It is therefore possible to "tether" anticompetitive conduct to the antitrust laws, while the universe of laws and/or regulations that bear on unfair practices is so varied that it is not possible to achieve a consensus which of these laws and regulations might apply to define an unfair practice.

*Cel-Tech* itself holds the key to the definition of "unfair" in consumer cases. *Cel-Tech* holds that "we may turn for guidance to the jurisprudence" arising under section 5 of the Federal Trade Commission Act. (*Cel-Tech*, *supra*, 20 Cal.4th at p. 185.) Since 1980, the factors that define unfairness under section 5 are: (1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided. (*Orkin Exterminating Co. v. F.T.C.* (11th Cir. 1988) 849 F.2d 1354, 1364.) These factors have now been codified in title 15 United State Code section 45(n).[12] This definition of "unfair" is on its face geared to consumers and is for that reason appropriate in consumer cases. It is also suitably broad and is therefore in keeping with the "sweeping" nature[13] of section 17200. We will refer to this as the "section 5 test."

The Attorney General suggests that, in a post-*Cel-Tech* setting, the courts should apply the older, three-pronged test set forth in *FTC v. Sperry & Hutchinson Co.*, *supra*, 405 U.S. 233, which was applied in California in *People v. Casa Blanca Convalescent Homes, Inc.*, *supra*, 159 Cal.App.3d 509. (See fn. 10 & accompanying text, *ante*.) The Attorney General reasons that this test is flexible enough to accommodate the "expansive sweep of

---

[12] Title 15 United States Code section 45(n) provides: "The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination."

[13] *Bank of the West v. Superior Court*, *supra*, 2 Cal.4th 1254, 1266.

unfair competition law" and that it ensures the "application of normative principles of unfairness." We think the Attorney General has identified sound objectives, but the *Sperry* test suffers from too many of the ills in the old definitions of unfair that our Supreme Court has identified in the *Cel-Tech* decision. The section 5 test is more focused and less dependent on subjective notions of fairness and, for these reasons, easier to apply and administer. The element of this test that requires the injury to be weighed against the benefits of the practice claimed to be unfair ensures that the practice is subjected to normative standards.

We invited the parties to comment on applying the section 5 test to define "unfair" in consumer cases arising under section 17200 et seq. Respondents support applying the section 5 test to consumer cases. Appellant and the Attorney General pose various objections, which we do not find persuasive.

Appellant contends that the first prong of the section 5 test, i.e., that the consumer injury must be substantial, engrafts a "substantial injury" requirement on Business and Professions Code section 17204, which only requires that a person who brings an action under section 17200 must have sustained an injury in fact. This confuses the standing requirement of Business and Professions Code section 17204 with a normative definition of "unfair" in consumer cases brought under section 17200. A definition of "unfair" in section 17200 consumer cases does not affect the general standing requirement of section 17204. Appellant also questions a "bright-line" test, assuming the section 5 test is such a test, in light of our Supreme Court's observation in *Cel-Tech* that such tests should be avoided in order to deal with the innumerable new schemes which the fertility of man's invention would contrive. (*Cel-Tech, supra,* 20 Cal.4th at p. 181.) We do not think that the section 5 test is unduly restrictive. On the contrary, it appears suitably flexible to apply to divergent situations, which is what the court's concern was in *Cel-Tech.* Finally, citing *Barquis v. Merchants Collection Assn., supra,* 7 Cal.3d at page 112, appellant contends that the section 5 test runs afoul of the principle that section 17200[14] "undeniably establishes only a wide standard to guide courts of equity." As the somewhat troubled, post-*Cel-Tech* history of "unfair" in section 17200 consumer cases shows, courts, as well as society at large, must have some guidelines to determine what is, or is not, unfair for purposes of section 17200. A "wide" standard is nonetheless a standard, and we think that section 5 is that standard.

 The Attorney General notes that title 15 United States Code section 45(n) (see fn. 12, *ante*) provides that in determining whether an act or practice is unfair, the Federal Trade Commission (FTC) may consider estab-

---

[14] In *Barquis v. Merchants Collection Assn.,* the court addressed subdivision 3 of Civil Code section 3369, the predecessor of section 17200.

lished public policies as evidence to be considered with all other evidence, but such public policy considerations may not serve as a primary basis for such determination. The Attorney General's concern that there is no such limitation in California law is well placed. There is no such limitation in the three-pronged section 5 test that we set forth in the text, *ante*, at page 1403. The Attorney General is also concerned with the third element of the section 5 test (the injury must be one that the consumer could not have reasonably avoided) since, according to the Attorney General, most harm can be avoided by not buying a product or by "consulting an expert better able to detect potential harm." The Attorney General's interpretation of this element would significantly reduce the effectiveness of section 5, and for that reason is not the interpretation given this element by the FTC and the federal courts. As pointed out in *Orkin Exterminating Co., Inc. v. F.T.C., supra*, 849 F.2d 1354, 1365, consumers cannot have reasonably avoided the injury if they could not have reasonably anticipated the injury, if they did not have the means to avoid the injury, or if their free market decisions were unjustifiably hampered by the conduct of the seller. We think this approach is sound and should be followed in applying the third element of the section 5 test.

The Attorney General supports appellant's position that the section 5 test is insufficiently broad, contending that California law was "designed to create a wide standard for courts of equity to combat the varied forms of unfair practice that 'may run the gamut of human ingenuity and chicanery.' " There is nothing in the section 5 test that excludes one form of chicanery over another. Requiring more than a minimal or insignificant injury and balancing the injury against any countervailing benefits are generic considerations; neither the Attorney General nor appellant have suggested a type or types of cases that would be excluded by the section 5 test. Nor does the section 5 test limit the equitable powers of the courts. Those powers are suitably brought into play in balancing the injury against any countervailing benefits to consumers or competition.

It is clear that, under the section 5 test, Camacho has not pleaded, and cannot plead, facts that show that defendants' business practices are unfair. We begin with the observation that Camacho does not dispute that he was at fault in the accident, and that he was uninsured. Assuming for the purposes of discussion that his complaint alleges a valid class action (see fn. 5, *ante*), the class cannot include persons who are not liable, and from whom Bell seeks to collect monies that are not actually owed. These persons are in a much different situation than Camacho, and for that reason could not be members of his class.

In light of this fact, it cannot be said that Camacho was injured by the allegedly unfair practice, much less that his injury is substantial. Webster's

defines "injury" as a violation of another's rights for which the law allows an action to recover damages. (Webster's 9th New Collegiate Dict. (1990) p. 623.) Since Camacho was liable for the damages arising from the accident, it does not violate his rights to attempt to collect those damages. In other words, he was not injured. Our conclusion is the same that the trial court reached, when it concluded that even if there was some conduct that was "theoretically unfair, no actual unfairness is alleged to have harmed plaintiff."

Camacho's action also fails to meet the second prong of the consumer test. Keeping in mind that the object of the business practice at issue is to collect a sum that is actually owed, the "injury" of paying such a sum is clearly not outweighed by the benefits of collecting such sums. The public is well served when an uninsured driver who was at fault responds to his or her obligations. The benefits of collecting such sums clearly outweighs the "injury" of having to pay a sum of money that is owed.

Finally, it is also true that the "injury" in this case is one that Camacho could have reasonably avoided by complying with the law and obtaining insurance. Thus, even if there is some theory under which Camacho can claim that he was "injured," the fact is that he could have avoided any and all action taken by defendants by obtaining and carrying insurance, as the law requires.

We note that the complaint describes collection devices used by Bell that may, or may not, violate the FDCPA. (See fn. 7, *ante.*) If Bell has violated this act, and we do not express an opinion whether Bell did or did not violate the act, Camacho has his remedies under the FDCPA, which includes, but is not limited to, his actual damages.

For the foregoing reasons, we conclude that Camacho has not, and cannot, plead facts sufficient to show that the business practice of which he complains is unfair for purposes of section 17200.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. The SLAPP Motion*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1394.

## DISPOSITION

The order denying Exchange's motion to strike the complaint under Code of Civil Procedure section 425.16 and the judgment are affirmed. The parties are to bear their own costs on appeal.

Rubin, Acting P. J., and Boland, J., concurred.