Filed 5/31/16  Lample v. Calif. Physicians' Service CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| AMALIA CORONA LAMPLE, | 2d Civil No. B259380 |
| Plaintiff and Appellant, | (Super. Ct. No. BC441127) |
| | (Los Angeles County) |
| v. | |
| CALIFORNIA PHYSICIANS' SERVICE, | |
| Defendant and Respondent. | |

This is a class action brought by an insured against her medical insurer under the unfair competition law.  (Bus. & Prof. Code, § 17200.)  She alleged that her insurer charged premiums greater than those allowed by statutes governing the program under which she obtained her policy.  (Health & Saf. Code, §§ 1399.805, 1399.811.)[1]  A judgment arising from the trial court's sustaining of the insurer's demurrer was reversed on appeal.  (*Lample v. California Physicians' Service* (Jan. 30, 2012, B231849) [nonpub. opn.] (*Lample I*).)  On remand, the parties moved for summary judgment or adjudication.  The trial court denied plaintiff's motion and granted the insurer's motion for summary judgment.  We affirm.

---

[1] All statutory references are to the Health and Safety Code unless otherwise stated.

FACTS

The Health Insurance Portability and Accountability Act (HIPAA) provides a safety net for those who, due to job loss or change in employer-provided benefits, have lost their group health insurance. HIPAA is intended to allow such persons to obtain affordable health insurance. The law allows a state to adopt its own plan to provide such insurance.

California has enacted its own plan. (§§ 1366.35, 1399.805, Ins. Code, §§ 10900-10902.6.) A health care service plan may not decline coverage or exclude a preexisting condition for a person who qualifies under HIPAA. (§ 1366.35, subd. (a).) Sections 1399.805, subdivision (a)(1)(A) and 1399.811, subdivision (a)(1) provide that the maximum premium for a health service plan that offers a preferred provider arrangement shall not exceed the average premium paid by a subscriber of the Major Risk Medical Insurance Program (MRMIP) who is of the same age and resides in the same geographic area.

The MRMIP is a state sponsored health care coverage program for high risk individuals who cannot obtain health care coverage in the individual market. (Former Ins. Code, § 12700 et seq.)[2] Insurance companies participating in the MRMIP are regulated by the MRMIP Board. MRMIP premium rates are set by the board in a procedure that is not at issue here.

California Physicians' Service doing business under the name Blue Shield of California (Blue Shield) is not regulated by the MRMIP Board. Instead, as a health care service plan, Blue Shield is regulated by the California Department of Managed Health Care (DMHC). The DMHC is prohibited from setting rates. (§ 1367, subd. (j).) Rates are determined by the average of the MRMIP rates as provided in sections 1399.805 and 1399.811. But service care providers must submit rate changes to the

---

[2] Repealed by Stats. 2014, ch. 31, § 38, effective January 1, 2016. As alleged in Amalia Corona Lample's third amended complaint the overcharges by California Physicians' Service doing business under the name Blue Shield of California occurred between 2001 and 2010. Thus the repeal of the sections do not affect Lample's causes of action.

DMHC. If it finds the rates are not in compliance with the statutes, it must disapprove of the plan's contract. (§ 1399.815, subd. (a).)

*Complaint*

Amalia Corona Lample filed a class action alleging Blue Shield violated California's unfair competition law (UCL). (Bus. & Prof. Code, § 17200.) Lample alleged that Blue Shield charged subscribers to its preferred provider health care service plans premiums that exceeded the rate caps provided in sections 1399.805 and 1399.811.

The dispute arises because the statutes do not specify a method for calculating the "average premium paid." Insurers calculate the averages based on a "cell"; that is, a particular age group of subscribers within a particular geographical area. Blue Shield uses a "straight average"; Lample claims Blue Shield is required to use a "weighted average." *Lample I* explains the difference as follows: "If two providers offer HIPAA PPO plans to eligible individuals in a particular rating cell—one at $100/month; the other at $150/month—the average monthly rate charged by the providers is $125 regardless of the number of subscribers to each plan. If there are 90 subscribers to the $100 plan and 10 subscribers to the $150 plan, however, the average monthly premium paid by a subscriber, using a weighted mean, is $105." (*Lample I*, *supra*, B231849, slip. opn. at p. 20, fn. 13.) The weighted average is intended to prevent a small group of subscribers from distorting the average.

Lample concedes that neither sections 1399.805 nor 1399.811 specify how the average is to be calculated. Nor has the DMHC adopted any formal regulation specifying how the average is to be calculated. Lample alleges the DMHC's interpretation of sections 1399.805 and 1399.811 require the use of a weighted average, and that as a regulatory agency, the DMHC's interpretation of the statutes is entitled to judicial deference.

Lample alleged that shortly after sections 1399.805 and 1399.311 were enacted, "representatives from the [MRMIP], the [DMHC] and the Department of Insurance (DOI) met to work out implementation details—including how to calculate 'the average premium paid.' They discussed what would be the appropriate way for the

3

[MRMIP] to provide this data to the DMHC and the DOI. The agreement, pursuant to the requests of the DMHC and the DOI, was that the [MRMIP] provide a weighted average by region and age range, i.e., the 'average premium paid.'"

The trial court sustained Blue Shield's demurrer to the complaint on the ground that Blue Shield is entitled to use the procedures it employed to date and Lample's procedure is not required by statute. Lample appealed.

### *Lample I* [3]

The UCL bars any "unlawful, unfair or fraudulent" business act or practice. (Bus. & Prof. Code, § 17200.) The "unlawful" prong of the UCL requires a showing that some other law has been violated. (*Lample I*, *supra*, B231849, slip opn. at p. 10.) The "unfair" prong of the UCL requires a showing that an act, although not unlawful, is unfair within the meaning of the UCL. (*Ibid.*)

Lample alleged that Blue Shield acted unlawfully in that its use of a straight average to calculate premiums violates sections 1399.805 and 1399.811, as those sections are interpreted by administrative agencies.

*Lample I* pointed out that ultimately the interpretation of a statute is a matter of law for the courts. (*Lample I*, *supra*, B231849, slip opn. at p. 12.) Depending on the circumstances, however, an administrative agency's interpretation of a statute may be helpful to the court. (*Id.* at p. 16.) The court left open the question how much deference an administrative interpretation of the statutes should be given. (*Ibid.*) The court pointed out, however, that an administrative interpretation adopted in violation of the Administrative Procedure Act (APA) (Gov. Code, § 11400 et seq.) receives no deference at all. (*Ibid.*)

Lample contended she could "amend her complaint to allege facts clearly showing the policy is not akin to an underground regulation, but one that, based on the

---

[3] *Lample I* was decided by Division Seven. After two of the justices recused themselves, the case was transferred to Division Six.

4

context and circumstances surrounding its adoption, is entitled to judicial deference."[4] (*Lample I*, *supra*, B231849, slip opn. at p. 16.) The court reversed, concluding she is entitled to an opportunity to do so.

Lample I then asked the parties to brief whether Blue Shield violated the unfair prong of the UCL. The court adopted the definition of unfair as stated in *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403. A business practice is unfair if "(1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not have reasonably been avoided by consumers themselves." (*Lample I*, *supra*, B231849, slip opn. at p. 23.) The court concluded that Lample should be allowed to amend her complaint to allege an unfair business practice.

*Lample's Motion for Summary Judgment or Adjudication*

Lample moved for summary adjudication on her cause of action. She alleged that Blue Shield violated sections 1399.805 and 1399.811 and acted unlawfully by using a straight average. She claimed that those sections as interpreted by the DMHC require Blue Shield to use a weighted average.

In support of her motion, she submitted portions of a deposition of Laura Rosenthal, Chief Counsel to the MRMIP. Rosenthal testified that shortly after the law was enacted, she had discussions with the DMHC about providing it with data to use in establishing premiums. She said: "[W]e simply assumed that we would be helpful and give them that information. I don't think it was more . . . elaborate than that."

Amal Abu-Rahma, DMHC's enforcement counsel, testified the DMHC received rates annually from the MRMIP related to the calculation of the average premium paid. The MRMIP calculation was based on a weighted average. This was based on an agreement that the MRMIP would calculate its rates and provide the information to the DMHC on an annual basis.

---

[4] An "underground regulation" is a regulation that has not been adopted pursuant to the APA and for which there is no express exemption from the APA. (Cal. Code Regs., tit. 1, § 250, subd. (a).)

Lample submitted two Public Records Act (PRA) requests (Gov. Code, § 6253) to the DMHC. The first request sought the maximum premium rates, the procedures by which the DMHC calculated those rates and the procedures by which the DMHC learned of the average premium paid. In response, the DMHC produced the rate calculations performed by the MRMIP. The second PRA request sought all documents the DMHC relied on to ascertain whether the insurance providers comply with methodology or rate limits specified in the statutes. In response, the DMHC provided the rate filings by Blue Shield and the averages determined by the MRMIP.

Finally, Lample submitted a heavily redacted position paper produced by the DMHC in support of an assembly bill. The unredacted portion of the position paper states: "Current law sets forth a self-certification process for health plans when they file premium rate changes with the DMHC. For example, currently a health plan files a statement 'certifying' that its premium rates for HIPAA contracts are in compliance with the law. However, current law does not include express enforcement authority to help ensure that rate information filed with the DMHC is accurate and compliant with law."

*Blue Shield's Motion for Summary Judgment*

Blue Shield moved for summary judgment.

The DMHC has the authority to disapprove rate filings if they do not comply with applicable law. (§ 1399.815, subd. (a).) In an appendix to a letter responding to a PRA request, the DMHC stated: "Rate filings for HIPAA GI products are also submitted to the DMHC as amendments to the plans' license applications. If the DMHC finds that a HIPAA GI rate filing does not comply with applicable law, the DMHC will ask the plan to modify its rates to be in compliance." Blue Shield filed its original plan in 2000 and annual plan amendments thereafter. DMHC did not disapprove of any plan.

On October 15, 2001, Blue Shield officials met with a DMHC director and deputy director. During the meeting, they discussed how Blue Shield calculated its rates, specifically that it used a straight average. The DMHC director and deputy director raised no objection.

6

A letter dated October 29, 2001, from State Senator Jackie Speier, the author of sections 1399.805 and 1399.811, to DMHC Director Daniel Zingale, states in part: "I have been made aware of a discrepancy in the premiums charged by Blue Shield and Blue Cross as compared to Health Net. Blue Shield and Blue Cross premiums are an average of ALL of the MRMIP products (PPOs and HMOs) whereas Health Net premiums are an average of only the MRMIP PPO products. And apparently, the Blue Cross premium reflects a 'weighted' adjustment of all of the MRMIP products based on the number on enrollees in each plan. [¶] Therefore, HIPAA patients are being charged 3 different rates rather than a single rate. I intended the HIPAA premium to be the non-weighted average of ALL MRMIP products. [¶] Part of the problem is that the [DMHC] regulates Blue Shield and Blue Cross PPOs and the California Department of Insurance regulates Health Net's PPOs. At the very least, we need [a] single and consistent interpretation of SB 265 by the State on behalf of HIPAA patients."

Blue Shield provided the unredacted DMHC position paper presented by Lample in a heavily redacted form. The paper was in support of proposed legislation that the DMHC stated would "clarify statutory caps on premiums charged by health care service plans for HIPAA PPO contracts," among other goals. The paper stated the legislation establishing rate caps for such plans is ambiguous in that it does not define "average premium." The paper noted that Blue Cross and Blue Shield use different methods for determining the average premium. The paper continued: "Initially, the author of the statutory cap for PPO products intended it to mean a *non-weighted* average of *all* MRMIP products. Further, at least one previous Insurance Commissioner, and the MRMIB have construed the PPO statutory cap to mean a *weighted* average of all MRMIP products. The DMHC never formally adopted a position on the matter; nor has the current Insurance Commissioner. In fact, none of the three regulators (DMHC/CDI/MRMIB) have adopted a formal interpretation or regulation to define 'average premium.' Thus, the lack of clear guidance in the statute resulted in health plans selling PPO products using different 'average premium' formulas." (Original italics.)

In late 2008, the DMHC conducted an investigation to determine whether Anthem or Blue Shield had violated the rate cap mandated by sections 1399.805 and 1399.811. Blue Shield informed the DMHC that it had always used a straight average. DMHC enforcement counsel, Abu-Rahma, testified the DMHC was unable to calculate what the rate should be because the law is ambiguous.

DISCUSSION

I.

Summary judgment is granted only if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The court must draw all reasonable inferences from the evidence set forth in the papers except where such inferences are contradicted by other inferences or evidence that raise a triable issue of fact. (*Ibid.*) In examining the supporting and opposing papers, the moving party's affidavits or declarations are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19.)

The moving party has the initial burden of showing that one or more elements of a cause of action cannot be established. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Where the moving party has carried that burden, the burden shifts to the opposing party to show a triable issue of material fact. (*Ibid.*) Our review of the trial court's grant of the motion is de novo. (*Id.* at p. 767.)

Summary adjudication employs the same procedure as a motion for summary judgment. (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 324.)

II.

Lample contends the trial court erred in denying her motion and granting Blue Shield's motion on her cause of action for violation of the "unlawful" prong of the UCL.

8

Lample alleged that the DMHC's interpretation of sections 1399.805 and 1399.811 required Blue Shield to use a weighted average. But Lample's evidence shows nothing more than that the MRMIP provided the DMHC with calculations using the weighted average. The MRMIP did not provide the information to the DMHC pursuant to any rule or regulation, but by an informal agreement between the two agencies. Lample produced no evidence to show the DMHC ever required any health care plan provider to use the MRMIP's calculations or interpreted the statutes as requiring the use of the MRMIP formula.

Lample's reliance on her PRA requests is misplaced. A PRA request is not the equivalent of an interrogatory propounded to a party pursuant to Code of Civil Procedure section 2019.010, subdivision (b). A PRA request produces nothing more than whatever written records an agency has on the topic of the request. In this case, it produced only the MRMIP rate calculations. Lample's own evidence put those records into context as information provided to the DMHC on an informal basis. They do not show DMHC's interpretation of any statute.

On the other side, Blue Shield produced uncontradicted evidence that: The DMHC was well aware of how Blue Shield was calculating its rates. The DMHC had the power to disapprove of the rates but did not. DMHC even undertook an active investigation of Blue Shield's rates. DMHC found no fault with the rates. DMHC's enforcement counsel testified the DMHC was unable to calculate what the rate should be because the law is ambiguous. The DMHC position paper in support of legislation to clarify the matter states DMHC has not adopted a formal interpretation or regulation to define average premium.

Blue Shield's uncontradicted evidence shows that the DMHC did not interpret sections 1399.805 and 1399.811 as requiring the use of a weighted average. Instead, the DMHC determined the statutes are too ambiguous to require the use of any particular formula to calculate the average premium.

In any event, even if the DMHC had adopted a policy of interpreting sections 1399.805 and 1399.811 as requiring the use of a weighted average, that policy

9

would be void.  The APA defines regulations very broadly to include every rule, regulation, order, or standard of general application adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.  (Gov. Code, § 11342.600.)  Policies of state agencies that interpret statutes constitute regulations, and are void if they are not adopted in accordance with the APA.  (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561.)

Here it is uncontested that if the DMHC adopted the policy of interpreting the statute as requiring the use of a weighted average, it was not adopted pursuant to the APA.  Lample argues that establishing such a policy is exempt from the provisions of the APA.  Lample points out that the APA does not apply to a regulation that establishes or fixes prices.  (Gov. Code, § 11340.9, subd. (g).)

But the regulation alleged here does not establish any price.  Instead, the alleged regulation establishes a policy or procedure for setting prices.  In *California Assn. of Nursing Homes etc., Inc. v. Williams* (1970) 4 Cal.App.3d 800, nursing homes complained that the Medi-Cal administrator was setting reimbursement rates without first adopting regulations for setting rates in compliance with the APA.  Medi-Cal argues it was exempt from complying with the APA under former Government Code section 11380, subdivision (a)(1).  That subdivision is the predecessor to the current Government Code section 11340.9, subdivision (g).  Like the current statute, the former statute exempted regulations that establish or fix rates, prices or tariffs.  In rejecting Medi-Cal's argument, the court pointed out that the agency is empowered to establish policies for the fixing of rates for the payment of services.  The court stated:  "[T]he scope of the agency's regulations is much broader than the Administrative Procedure Act's narrow exemption of rates, prices or tariffs.  Although the Medi-Cal agency's regulations deal with rates or establish rate formulae, they are not within the dispensation provided in section 11380, subdivision (a)(1)."  (*Id.* at p. 821.)

Thus where, as here, a regulation does not establish or fix a price itself, but establishes a policy or procedure under which prices are fixed, it is not exempt from the APA.

10

In any event, the DMHC is prohibited from establishing prices. Section 1367 states: "Nothing in this section shall be construed to permit the director to establish the rates charged subscribers and enrollees for contractual health care services." Even if the alleged regulation was exempt from complying with the APA, it would be void under section 1367.

III.

Lample contends she is entitled to a judgment on her unfair prong of the UCL.

*Lample I* adopts the definition of unfair as stated in *Camacho v. Automobile Club of Southern California*, *supra*, 14 Cal.App.4th at p. 1403. Under that definition, Lample must show that the consumer's injury is substantial; the injury is not outweighed by countervailing benefits to consumers or competition; and the injury could not have been reasonably avoided by consumers.

Lample claims she suffered substantial injury because she paid $4,475.88 more than she would have, had Blue Shield used the MRMIP's weighted average. But as we have explained, Blue Shield was not required to use the MRMIP's weighted average. The unfair prong of the UCL does not require a business to charge the lowest possible price. Lample was not injured within the meaning of the UCL simply because Blue Shield could have charged her less. Lample's failure to show injury is alone fatal to her cause of action.

Moreover, the undisputed evidence shows Lample could have avoided paying more. She could have chosen among other similar HIPAA PPO policies offered by companies such as Aetna, Health Net and PacifiCare. In fact, Lample's complaint alleges that all other HIPAA PPO providers offered coverage for less money. Thus, Lample could have easily avoided the alleged injury.

Lample claims that at the time she purchased her Blue Shield policy she did not know Blue Shield used a straight average. But Lample had the opportunity to compare coverage and price. How the price was calculated is irrelevant to her opportunity to avoid the injury.

11

IV.

Lample contends the trial court erred in overruling her objections to Blue Shield's evidence.

Many of Lample's arguments are based on what she considers the law of the case as established in *Lample I*. But *Lample I* was decided on review of a judgment arising from the sustaining of a demurrer. On demurrer, the court is limited to considering evidence of which it may take judicial notice. (See Code Civ. Proc., § 430.30, subd. (a).) In ruling on a motion for summary judgment or adjudication, the court is not so limited. (See *id*., § 437c, subd. (b)(1).) A principle doctrine stated by a reviewing court is only law of the case when it is necessary for the court's decision. (See *Water Replenishment Dist. of Southern California v. City of Cerritos* (2012) 202 Cal.App.4th 1063, 1071.) Here *Lample I* did not purport to rule on what evidence is admissible in a motion for summary judgment or adjudication. Even if it had so ruled, it would not be law of the case because such a ruling would not be necessary to the decision.

Lample made a hearsay objection to the admission of an unredacted DMHC position paper in support of legislation that would clarify statutory caps. The trial court overruled the objection. Lample had submitted a heavily redacted version of the same position paper in support of her motion. Evidence Code section 356 provides in part: "Where part of [a] . . . writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party . . . ." Thus, Blue Shield's unredacted position paper is admissible.

Nor does Lample cite any authority to support the claim that the unredacted portion of the position paper cannot be considered for the truth of the matter asserted therein. (See *People v. Vines* (2011) 51 Cal.4th 830, 862 ["Nor, as defendant argues, would the confrontation clause of the Sixth Amendment to the United States Constitution have precluded the admission under the hearsay exception embodied in Evidence Code section 356"].) Lample cites *People v. Lewis* (2008) 43 Cal.4th 415, 458, for the proposition that Evidence Code section 356 "permits the introduction of statements that

12

are necessary for the understanding of, or to give context to, statements already introduced." She argues Blue Shield's unredacted position paper fails to do so.

But Blue Shield's unredacted version is both necessary for the understanding of and gives context to Lample's heavily redacted version. Contrary to what Lample attempted to show in the heavily redacted version, the unredacted version shows that the DMHC had no rule or statutory interpretation in place requiring the use of a weighted average. The unredacted version includes the statement, "[t]he DMHC never formally adopted a position on the matter [of using a non-weighted or weighted average]."

We need not consider other objections raised by Lample. The trial court properly admitted the unredacted version of the DMHC position paper. In addition, Abu-Rahma, the DMHC's enforcement counsel, testified in a deposition that the DMHC conducted an investigation to determine whether Blue Shield had violated the rate cap mandated by sections 1399.805 and 1399.811; Blue Shield informed the DMHC that it always was a straight average; and that the DMHC was unable to calculate what the rate should be because the law is ambiguous. The DMHC position paper and Abu-Rahma's testimony were properly admitted into evidence and uncontradicted. They unequivocally show the DMHC had no regulation requiring Blue Shield to use a weighted average. Thus, even if the trial court erred in admitting other evidence presented by Blue Shield, the error was harmless. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 445, p. 499.) Moreover, even had the DMHC adopted such a regulation, as we have stated, it would be void as violating the APA.

13

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


YEGAN, Acting P. J.



TANGEMAN, J.


14

Jane L. Johnson, Judge

Superior Court County of Los Angeles

_____


  Kiesel Boucher Larson, William L. Larson and Herbert L. Greenberg, for Plaintiff and Appellant.

  Manatt, Phelps & Phillips, Gregory N. Pimstone, Craig S. Bloomgarden and Joanna S. McCallum, for Defendant and Respondent.