Patricia Sue **ADKINS**, et al., Plaintiffs,

v.

**APPLE INC.**, et al., Defendants.

Case No. 14–cv–01619–WHO

United States District Court, N.D. California.

Signed July 3, 2014

914

John R. Parker, Jr., Curtis Brooks Cutter, Kershaw Cutter & Ratinoff, LLP, Sacramento, CA, Renee Fagan Kennedy, Attorney at Law, Friendswood, TX, Mark Philip Meuser, Meuser Law Group, Inc., Walnut Creek, CA, Peter D. Kafin, Fort Bragg, CA, Seth Wesley Wiener, Law Offices of Seth W. Wiener, San Ramon, CA, Steven Richard Weinmann, Law Office of Steven R. Weinmann, Montara, CA, for Plaintiffs.

Purvi Govindlal Patel, Morrison & Foerster LLP, Los Angeles, CA, Margaret Elizabeth Mayo, Penelope Athene Preovolos, Morrison & Foerster LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IN PART

WILLIAM H. ORRICK, United States District Judge

### INTRODUCTION

Plaintiffs Patricia Sue Adkins, Jennifer Galindo, and Fabrienne English have sued defendants Apple, Inc., AppleCare Service Company, Inc., and Apple CSC, Inc. (collectively, "Apple") for consumer fraud. They allege that Apple salespersons represented that Apple service plans entitled plaintiffs to new replacement devices and parts, when in fact Apple uses secondhand replacement devices and parts, and that they would not have purchased the service plans but for this alleged misrepresentation. Contrary to Apple's contention, that is sufficient for Article III standing, and plaintiffs have stated plausible claims under California's Unfair Competition Law, False Advertising Law, and Consumer Legal Rights Act.

On the other hand, Adkins's and Galindo's claims under the Secondhand Merchandise Labeling Law claim are DISMISSED WITHOUT LEAVE TO AMEND because they did not purchase any secondhand products. English's Secondhand Merchandise Labeling claim survives based on her allegation that she purchased a used iPhone that Apple did not indicate was used. Plaintiffs did not provide pre-suit notice of the alleged breach of express warranty, so that claim is DISMISSED WITHOUT LEAVE TO AMEND.

### BACKGROUND

Plaintiffs' first amended complaint ("FAC") includes two separate allegations: (i) that the plaintiffs purchased AppleCare+ service plans in reliance on Apple's misrepresentations and (ii) United States District Court Northern District of California that plaintiff English purchased what Apple represented was a new iPhone, but was in fact a refurbished phone that did not function properly. Plaintiffs allege causes of action for (i) violation of the Consumer Legal Remedies Act, (ii) breach of warranty, (iii) fraud, (iv) violation of the California False Advertising Law, (v) violation of the Secondhand Merchandise Labeling Law, (vi) violation of the California Unfair Competition Law, and (vii) unjust enrichment.[1] They seek to represent a class defined as:

> All individual persons in the United States who, for purposes other than resale, purchased Class Devices manufactured by Apple and/or Extended Warranties sold by Apple, who have not returned them or received a refund.

---

1. The FAC also alleges a cause of action under the Song–Beverly Consumer Warranty Act. The plaintiffs have withdrawn this cause

¶ 67.[2]

## I. PLAINTIFFS' PURCHASES OF APPLECARE+ SERVICE PLANS

English purchased an iPhone 4 and wireless service from Sprint Online. ¶ 56. Adkins purchased an iPod Touch and Jennifer Galindo purchased an iPhone 5 from separate Apple Stores in Texas. ¶ 34. They each purchased AppleCare+ service plans[3] from Apple Stores after being told by Apple Store salespersons that the service plans entitled them to new, not refurbished, devices, if their devices were damaged.

At the time that Adkins purchased her iPod Touch, an Apple Store salesperson told her that "the AppleCare+ plan cost $59.00 and that she would 'get coverage for two full years.'" ¶ 34. The salesperson explained that "when you get that, not only do you get regular coverage but it's AppleCare+ so you get physical damage coverage. Two times within two years you will get a replacement cost of only $29.00 to replace that device if something is wrong with it." The salesperson told Adkins that the replacement would be the "same model. Yep, you don't lose. You don't get downgraded and it's not a refurbished model, either." *Id.* Two days later, on November 1, 2013, Adkins went to a different Apple Store for help setting up her iPod. *Id.* A salesperson told her that if she needed a replacement device under the AppleCare+ service plan, "[w]e give you a completely new device and one that's just like yours. You get an iPhone 5S, a gold phone, you get an iPhone 5S. Urn [sic] you pay the $79 and you get a brand

new one." *Id.* The FAC claims that "[o]bviously the salesperson was speaking by way of example, as Adkins had purchased an iPod, not an iPhone." *Id.*

Similarly, the day that she purchased her iPhone 5, October 30, 2013, Galindo was told by an Apple Store salesperson that the AppleCare+ service plan covered "drops and everything, yeah, with that it would be $79 to replace it and get a new one." ¶ 42. The salesperson told Galindo that the replacement device would be "brand new." *Id.*

Likewise, on February 15, 2013, English purchased an AppleCare+ service plan from an Apple Store in Texas after a salesperson "told English that a replacement device would be new." ¶ 53.

At the time that the plaintiffs purchased their AppleCare+ service plans, there was no written information in the Apple Stores, "conspicuously posted within public view," indicating that the AppleCare+ service plans authorized Apple to replace the devices with used or reconditioned devices that were not functionally equivalent to new devices, or to repair the devices using reconditioned parts that were not functionally equivalent to new parts. ¶¶ 35, 43, 54. Nor did the Apple Store salespersons tell the plaintiffs that the AppleCare+ service plans authorized Apple to replace or repair the devices with used or reconditioned devices or parts that were not functionally equivalent to new devices or parts. ¶¶ 36, 44, 55.

Plaintiffs allege that, contrary to the Apple Store salespersons' representations, under the AppleCare+ service plan, Apple

---

of action as they did not purchase their devices in California. Opp. at 13.

**2.** Unless otherwise noted, all paragraph citations are to the FAC.

**3.** "Extended warranties," as used in the FAC, includes the AppleCare and AppleCare+ service plans. However, the three named plain-

tiffs purchased the AppleCare+ plan; none purchased the AppleCare plan. Accordingly, for purposes of this motion, this order refers to the AppleCare+ service plan, not the Extended Warranties. Likewise, rather than refer to Class Devices, the order refers to the actual devices purchased by the named plaintiffs, i.e., iPhone, iPad.

"provide[s] replacement [devices] that are used or reconditioned and that are neither new nor functionally equivalent to new [devices]," and Apple makes repairs "using parts that are used or reconditioned, and that are neither new nor functionally equivalent to new parts." ¶ 27; *see also* ¶¶ 24, 28, 29 (alleging that Apple uses replacement devices and parts that are not functionally equivalent to new devices and parts).

Relying on their discussions with the sales representatives, "and uninformed as to the true character" of the AppleCare+ service plan, the plaintiffs purchased AppleCare+ service plans.[4] ¶¶ 38, 47, 56. The plaintiffs would not have purchased the AppleCare+ service plans if they had been told that, under the plans, Apple would not provide a replacement device "that was new or the functional equivalent of new," and that Apple would use used or reconditioned repair parts that were not functionally equivalent to new parts.[5] ¶¶ 39, 48, 56.

## II. APPLE'S SALE OF REFURBISHED IPHONE TO PLAINTIFF ENGLISH WITHOUT INDICATING THAT IT WAS REFURBISHED

The iPhone 4 that English purchased from Sprint Online had a cracked screen and needed to be replaced. ¶ 57. On February 15, 2013, English purchased what she thought was a new iPhone 4 for $99 from an Apple Store in Dallas. ¶ 53. The iPhone 4 "was taken out of a plain white box by the Apple Store employee." ¶ 58. The FAC alleges that "[t]he container did not bear any label or other writing indicating that the [iPhone 4] was refurbished, reconditioned, used, or contained parts that were refurbished, reconditioned, or used; nor did the Apple Store employee so advise her." *Id.* The iPhone was not new and it did not function adequately: "it would freeze up, *i.e.* stop working without warning, and even would 'close' unexpectedly." *Id.* On information and belief, English alleges that the iPhone 4 was "a refurbished, reconditioned, or second hand phone, or contains parts that are refurbished, used, reconditioned, or second hand, and is not the functional equivalent of a new iPhone 4 Class Device." *Id.* The phone completely stopped working on or about July 22, 2013, and English took it in for replacement. ¶ 59. The iPhone 4 Apple replaced it with "also has freezing issues." *Id.*

### LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise

---

4. Adkins paid $59 for a two-year AppleCare+ service plan for her iPod Touch. ¶ 38. Galindo paid $99 for a two-year AppleCare+ service plan for her iPhone 5. ¶ 47. English paid $99 for a two-year AppleCare+ service plan for her iPhone 4. ¶ 56.

5. The terms and conditions of the AppleCare+ service plan are attached as Exhibit B to the FAC. The plan provides that if a valid claim is submitted, "Apple will either (a) repair the defect at no charge, using new parts or parts that are equivalent to new in performance and reliability, or (b) exchange the Covered Equipment, with a replacement product that is new or equivalent to new in performance and reliability. All replacement products provided under this Plan will at a minimum be functionally equivalent to the original product." FAC Ex. B, ¶ 3.1.

a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir.2012). If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir.1990).

## DISCUSSION

### I. PLAINTIFFS HAVE ARTICLE III STANDING

█ Apple argues that plaintiffs Adkins and Galindo lack Article III standing because they have not pleaded "injury in fact." [6] Apple contends that Adkins and Galindo lack injury because they never experienced an issue with their devices nor sought repair or replacement under their service plans, much less received repair parts or replacement devices that were not new or not equivalent to new in performance and reliability. Apple asserts that Adkins and Galindo could avoid any risk of future injury because, at the time they filed their complaint, they could still have returned their AppleCare+ plans and devices for refunds.

█ Adkins and Galindo have standing. Under Article III of the United States Constitution, a plaintiff must show "injury in fact" to have standing in federal court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v.*

*Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir.2011). I and other judges in the Northern District have repeatedly held, in the food labeling context, that an allegation that a plaintiff would not have purchased the defendants' product but for the product being mislabeled is sufficient to confer Article III standing. *See, e.g., Victor v. R.C. Bigelow, Inc.*, 13–cv–02976–WHO, 2014 WL 1028881, *4 (N.D.Cal. Mar. 14, 2014) ("Victor has Article III standing to bring this case. He alleges that he purchased Bigelow's products that he would not have otherwise purchased had they not been mislabeled."); *Lanovaz v. Twinings N. Am., Inc.*, 12–cv–02646–RMW, 2013 WL 675929, at *6 (N.D.Cal. Feb. 25, 2013) ("The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims."); *Khasin v. Hershey Co.*, 12–cv–01862 EJD, 2012 WL 5471153, at *6 (N.D.Cal. Nov. 9, 2012).

Adkins and Galindo allege that they would not have purchased the AppleCare+ service plans had Apple Store salespersons not misrepresented that the plans entitled them to new replacement devices and repair parts. That is sufficient to establish injury in fact for Article III standing. It is beside the point that Adkins and Galindo have not submitted their devices for service under the plans and received non-new devices or parts; what matters is that they would not have purchased the plans in the first place if the plans had not allegedly been misrepresented. *Cf. Victor*, 2014 WL 1028881, at *4 (rejecting argument that purchaser of mislabeled tea product lacked injury where purchaser consumed the product without incident, the product was not unfit for its intended use, and the product was not tainted, spoiled, or contaminated).

**6.** Apple does not dispute that English has Article III standing.

I also reject Apple's contention that Adkins and Galindo lack injury because they could have returned their AppleCare+ plans and devices for refunds if they were unhappy with them. Apple cites no authority for this proposition. In contrast, the Ninth Circuit has held that the presence of a money-back guarantee does not mean that consumers are not injured by misrepresented products. *See F.T.C. v. Pantron I Corp.,* 33 F.3d 1088, 1103 (9th Cir.1994). *Pantron* involved false advertisement under the Federal Trade Commission Act, but it is nonetheless instructive here. The Federal Trade Commission alleged that Pantron's advertisement for a baldness cure contained false representations and constituted unfair or deceptive trade practices under the Federal Trade Commission Act. The district court agreed that the advertisement violated the Federal Trade Commission Act but refused to order Pantron to pay restitution or disgorge its profits, finding that there was no injury to consumers as Pantron offered a money-back guarantee. *Id.* at 1102. The Ninth Circuit held that this was error, explaining that "allowing a seller to rely on a money-back guarantee as a defense to [false advertising] charges would make the false advertising prohibitions of the Act a nullity. Anything might then be advertised as long as unsatisfied customers were returned their money." *Id.* at 1103 (internal citation omitted). It went on to explain that "[b]ecause even many unsatisfied customers will not take advantage of a money-back guarantee, a company which has engaged in consumer fraud would be able to retain a significant portion of the proceeds simply by making a largely illusory money-back offer." *Id.*

As in *Pantron,* allowing Apple to rely on its refund policy as a defense to the consumer fraud allegations in this case would make the consumer protection laws at issue "a nullity." [7] Whether Adkins or Galindo (or, if a class is certified, other class members) could or should have mitigated their losses by canceling the service plans is a question of remedies, not standing. *Cf Clayworth v. Pfizer, Inc.,* 49 Cal.4th 758, 789, 111 Cal.Rptr.3d 666, 233 P.3d 1066 (2010) ("While Manufacturers argue that ultimately Pharmacies suffered no compensable loss because they were able to mitigate fully any injury by passing on the overcharges, this argument conflates the issue of standing with the issue of the remedies to which a party may be entitled.").

## II. PLAINTIFFS' BREACH OF WARRANTY CLAIMS FAIL

The plaintiffs allege that Apple breached its express warranties [8] because

---

7. The parties dispute whether plaintiffs Adkins and Galindo knew or should have known that they had 30 days to cancel their service plans. I do not address this dispute because I determine that the return policy does not defeat Article III standing, even assuming that Adkins and Galindo knew of the policy.

8. The express warranties that plaintiffs' FAC alleges were breached are the AppleCare+ service plan and Apple's "basic warranty," which applies to uninsured consumers (i.e., those who do not purchase the AppleCare+ service plan). ¶ 106. Both the AppleCare+ service plan and the basic warranty state that Apple will replace or repair defective devices with devices or parts that are new or "equivalent to new in performance and reliability" and "at least functionally equivalent to the original product." ¶ 105, Exs. B, D (terms and conditions of AppleCare+ service plan and basic warranty, respectively). However, in their opposition to the motion to dismiss, plaintiffs suggest that the express warranties that were breached were the Apple Store salespersons' oral representations that the AppleCare+ service plan entitled the plaintiffs to new replacement parts and devices. *See* Opp. at 12 (arguing that November 4, 2013 letter gave Apple notice of the breach of warranty claim because letter requested "assurances that future service pursuant to the war-

the iPhone that English purchased from Apple on February 15, 2013 "did not function adequately, as it would freeze up, *i.e.* stop working without warning, and even would 'close' unexpectedly." ¶ 106. On information and belief, English alleges that this phone was "refurbished, reconditioned, or second hand phone, or contains parts that are refurbished, used, reconditioned, or second hand, and is not the functional equivalent of a new iPhone 4." *Id.* The phone "completely stopped working" on July 22, 2013, and English took it in for replacement. *Id.* The iPhone that Apple replaced it with "also had freezing issues." *Id.*

▮▮▮ "To recover on a breach of warranty claim, the buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of any breach or be barred from any remedy." *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal.App.4th 116, 135, 87 Cal.Rptr.3d 5 (2008) (internal punctuation omitted) (citing Cal. Com. Code § 2607(3)(A)). "This notice requirement is designed to allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements." *Cardinal Health,* 169 Cal.App.4th at 135, 87 Cal.Rptr.3d 5. The notice must be

provided before suit is filed. *See, e.g., Alvarez v. Chevron Corp.,* 656 F.3d 925, 932 (9th Cir.2011) (express warranty claim barred where plaintiffs sent their notice letter simultaneously with the complaint).

The plaintiffs' breach of warranty claim fails because the plaintiffs did not provide Apple pre-suit notice of the alleged breach of warranty. The November 4, 2013 letter to Apple does not constitute pre-suit notice as it was filed contemporaneously with the plaintiffs' original complaint.[9] I reject the plaintiffs' argument that the letter satisfied their notice obligations because the original complaint asked only for injunctive relief and Apple was "given ample opportunity to cure the breach of warranty between the time Plaintiffs filed the original Complaint and the time they filed the First Amended Complaint on February 10, 2014." Opp. at 11. The warranty claims are not based on facts discovered after the plaintiffs first filed suit. On the contrary, the plaintiffs' original complaint included the allegations that the terms of the AppleCare + plan and basic warranty are contrary to the verbal representations of Apple Store salespersons, that Apple uses replacement devices and parts that are not functionally equivalent to new devices and parts, and that the replacement devices

---

ranties would conform with what Plaintiffs were told by Apple Store employees"). Regardless of whether the express warranties at issue are the written plans and warranties or the salespersons' verbal representations, plaintiffs failed to provide pre-suit notice and their express warranty claims fail.

9. Plaintiffs' allege that "Plaintiffs timely provided Apple with written notice of its breaches of warranty by certified mail, and thereby provided Apple with an opportunity to correct or otherwise rectify the problems alleged herein before this Complaint was filed." ¶ 107. The FAC does not allege when the notice was provided to Apple or what information it contained. In its motion to dismiss, Apple claims that the alleged notice was sent

on November 4, 2013, the same day that Plaintiffs filed suit. Apple contends that this notice was inadequate because it was not delivered before suit and, in any event, did not provide notice of the breach of warranty, but instead provided the notice required under the Consumer Legal Remedies Act. The letter is attached as Exhibit A to Declaration of Purvi Patel. Apple requests that the Court take judicial notice of the letter. Dkt. No. 69 (Defendants' Request for Judicial Notice). Plaintiffs have not opposed this request and, in their opposition brief, implicitly concede that the referenced letter is the alleged notice which they provided to Apple. *See* Opp. at 11–12. The letter is incorporated into plaintiffs' complaint. *See* ¶ 107. Apple's request for judicial notice is GRANTED.

that English received were not new and did not function properly. *See, e.g.,* Complaint ¶¶ 37–38, 44–45, 49–54 [Dkt. No. 1]. As another judge in the Northern District wrote, allowing a plaintiff to assert a warranty claim under these circumstances would "eliminate Apple's opportunity to repair the defective item or negotiate a settlement before the initiation of litigation" and would "invite gamesmanship by plaintiffs who know they intend to assert a warranty claim but want to avoid giving a defendant notice before filing suit." *Donohue v. Apple, Inc.,* 871 F.Supp.2d 913, 929–30 (N.D.Cal.2012) (internal punctuation omitted) (citing *Cardinal Health,* 169 Cal. App.4th at 135, 87 Cal.Rptr.3d 5) (dismissing breach of warranty claims with prejudice where warranty claims were first alleged in amended complaint). Because plaintiffs failed to provide pre-suit notice, their breach of express warranty claim is DISMISSED WITHOUT LEAVE TO AMEND.[10]

### III. THE SECONDHAND MERCHANDISING LABELING LAW CLAIM IS DISMISSED AS TO ADKINS AND GALINDO BUT SURVIVES WITH RESPECT TO ENGLISH

The Secondhand Merchandising Labeling Law provides, in relevant part, that:

It is unlawful for any person, firm, or corporation ... to advertise, call attention to or give publicity to the sale of any merchandise, which merchandise is secondhand or used merchandise, or which merchandise is defective in any manner ... unless there is conspicuously displayed directly in connection with the name and description of that merchandise ... a direct and unequivocal statement, phrase, or word which will clearly indicate that the merchandise ... so advertised is secondhand, used [or] defective....

Cal. Bus. & Prof. Code § 17531.

■ Plaintiffs allege that Apple used "secondhand, used, and defective replacement devices and parts" "in fulfillment" of the AppleCare+ service plans sold to the named plaintiffs, without conspicuously indicating that the replacement devices and/or parts were secondhand, used, or defective. ¶ 141. However, Adkins and Galindo do not allege that they have bought secondhand, used, or defective devices or that they sought repair or replacement of their devices under their Apple-Care+ service plans or otherwise. The Secondhand Merchandising Labeling Law claim therefore fails as to them. The plaintiffs argue that Adkins and Galindo can state a Secondhand Merchandising Labeling Law because "Apple has announced an intention to not comply with the Extended Warranties, thereby breaching the warranties before a claim can even be made." Opp. at 13. But Adkins and Galindo have not submitted claims under their AppleCare+ service plans, so there is no allegation that they received merchandise from Apple that "*is* secondhand or used

---

**10.** In addition, the letter was substantively deficient as well. It makes no reference to the replacement phones that English received from Apple, much less that those phones were defective; rather, the letter sets forth plaintiffs' allegations that Apple Store sales representatives misrepresented that the Apple-Care+ service plan entitled plaintiffs to new replacement and repair merchandise. *See* Dkt. No. 70. It is insufficient that the letter states that "it also serves as notice of violations for any other cause of action for which they form the basis of complaint." Without some reference to the allegedly defective replacement phones, the letter did not provide Apple "the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements." *Cardinal Health,* 169 Cal.App.4th at 135, 87 Cal.Rptr.3d 5. Allowing plaintiffs to satisfy the notice requirement by referring to allegations in a complaint would defeat the purpose of requiring notice before the filing of a complaint.

merchandise, or which merchandise *is* defective in any manner," as required under the law. Cal. Bus. & Prof. Code § 17531 (emphasis added).

Plaintiffs also allege that Apple represented that the iPhone 4 sold to English on February 15, 2013 was new, when in fact it was "a refurbished, reconditioned, or second hand phone, or contains parts that are refurbished, used, reconditioned, or second hand...." ¶ 143. Apple seeks to dismiss this claim on the grounds that English did not purchase a new iPhone in February 2013, but received an out-of-warranty replacement unit because the iPhone she ordered from Sprint Online had a cracked screen. Apple argues that "English's allegation that she 'bought' a 'new' phone is belied by other allegations in the FAC and her receipt." Mot. at 11. Apple points to the allegation that the iPhone came out of a "plain white box," which, according to Apple, is a concession that the phone did "*not* [come out of] the Apple-branded box that comes with new iPhones." Mot. at 11 (citing ¶ 58) (emphasis in Apple's motion to dismiss). Apple also contends that "English's receipt unambiguously states that she paid Apple for an 'OW' (out of warranty) *repair* ('iPHONE DISC FLAT RATE REPAIR')—*not* for the purchase of a new iPhone." Mot. at 11 (citing FAC Ex. G) (emphasis in Apple's motion to dismiss).

Notwithstanding Apple's defense, English has adequately stated a claim under the Secondhand Merchandising Labeling Law. The FAC alleges that English "purchased what she thought was a new iPhone 4 for $99.00." ¶ 53. The FAC further alleges that English would not have purchased the phone had she known that it

was "reconditioned or refurbished" or that it contained "reconditioned, refurbished, second hand, or used parts." ¶ 57. Apple has no authority for its argument that the Secondhand Merchandising Labeling Law does not apply to replacement merchandise. Neither party cited any case law interpreting the Secondhand Merchandising Labeling Law, and I am not aware of any. However, I see no reason that the Secondhand Merchandising Labeling Law cannot, as a matter of law, apply to English's allegations. As noted, English alleges that she paid $99 for what she believed was a new iPhone. She does not allege that she received the iPhone pursuant to a service plan.[11] Whether she knew, or should have known, that the iPhone was not new because the phone came out of a plain white box rather than the Apple-branded box that comes with new iPhones, or because the receipt stated "iPHONE DISC FLAT RATE REPAIR" and "OW," are questions of fact that cannot be determined at the pleadings stage. Likewise, whether Apple did not "advertise, call attention to or give publicity to" the iPhone that English received, as required under the Secondhand Merchandising Labeling Law, is a factual question that cannot be resolved at this stage.

## IV. PLAINTIFFS' UCL, FAL, CLRA AND FRAUD CLAIMS ARE PLAUSIBLE

■ Apple argues that Adkins's and Galindo's UCL, FAL, CLRA, and fraud claims fail because they cannot plausibly allege reliance, causation, or injury. Apple contends that "[g]iven that they had the right to return their devices and cancel their Service Plans for full refunds, Adkins

---

11. Indeed, English bought her AppleCare+ service plan the same day that she bought the iPhone at issue in the Secondhand Merchandising Labeling Law claim. *See* ¶ 57 .("at the time English purchased the Extended Warranty, she also purchased what she thought

was a new iPhone 4 Class Device"). Accordingly, while English may have received a replacement phone at a favorable price as a "courtesy" to her, as Apple's counsel stated at oral argument, English did not receive the phone pursuant to a service plan.

and Galindo cannot claim injury based on the hypothetical possibility that they might experience a product failure and an unsatisfactory repair in the future." Mot. at 12.

I disagree with Apple's contention, for which it cited no authority. Adkins and Galindo have pleaded that they purchased the AppleCare+ service plans in reliance on alleged misrepresentations and would not have purchased the plans but for those misrepresentations. I cannot conclude that those allegations are not plausible, based merely on the plaintiffs' failure to cancel the service plans. As noted above in the discussion about standing, the plaintiffs allege that they were injured by purchasing the plans under false pretenses; that they may never experience unsatisfactory repairs in the future does not preclude their alleged injury. Adkins and Galindo have sufficiently pleaded reliance, causation, and injury.

## V. UNJUST ENRICHMENT IS NOT A CAUSE OF ACTION

■ "There is no cause of action in California for unjust enrichment." *World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*, 2014 WL 1411249, *2 (N.D.Cal. Apr. 11, 2014) (citing *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (2003)). Plaintiffs' cause of action for unjust enrichment is DISMISSED WITHOUT LEAVE TO AMEMD.

## VI. LEGAL ARGUMENT SHALL BE STRUCK FROM THE COMPLAINT

■ A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D.Cal.2001). However, in this case, striking nine paragraphs from the FAC which consist of improper legal argument is warranted. *See, e.g., Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 3504897, *1 (N.D.Cal. Sept. 7, 2010) (striking "legal argument, which does not belong in a complaint"). Paragraphs 24, 25, 25b, 31, 66, 66a, 66b, 66c, and 66d are ordered STRUCK.

## CONCLUSION

Apple's motion to dismiss plaintiffs' first amended complaint is GRANTED IN PART and DENIED IN PART. Plaintiffs' second (breach of warranty), third (violations of the Song–Beverly Consumer Warranty Act), and eighth (unjust enrichment) causes of action are DISMISSED WITHOUT LEAVE TO AMEND. Plaintiffs' sixth cause of action (violations of the Secondhand Merchandise Labeling Law) is DISMISSED WITHOUT LEAVE TO AMEND as to plaintiffs Adkins and Galindo, but survives as to plaintiff English. Paragraphs 24, 25, 25b, 31, 66, 66a, 66b, 66c, and 66d are STRUCK from the first amended complaint. Apple's request for judicial notice at Docket No. 69 is GRANTED. Apple shall file an answer to the remaining causes of action and paragraphs of plaintiffs' first amended complaint by July 23, 2014.[12]

**IT IS SO ORDERED.**

---

**12.** Since plaintiffs are not granted leave to amend any of their causes of action, this order does not require plaintiffs to file a further amended complaint. The surviving portions of the first amended complaint at Docket Number 38 shall be the operative complaint in this matter.